Estate of Martina R. Nixon, Deceased.

Argued November 19, 1931.

Before Trexler, P. J., Keller, Linn, Gaw-thorp, Cunningham, Baldrige, and Stadtfeld, JJ.

*Webster Grim,* and with him *Harry E. Grim* of *Grim & Grim,* for appellant.

*Thomas Ross,* for appellee.

Opinion by Keller, J., March 5, 1932:

Martina Nixon died on June 18, 1928. She left a will, dated November 3, 1926, by which she gave her entire estate in trust for her youngest son, payable to him when he became twenty-five years old. She specifically excluded her husband from any share in her estate, alleging that he had deserted her on or about September 17, 1917 and had not supported her since that date. See Shaw's Est., 54 Pa. Superior Ct. 444, 447.

The husband filed an election to take against the will and claimed his share under the intestate law.

At the hearing before the auditor it was admitted that he had left the family dwelling, title to which belonged to his wife, on September 17, 1917 and had not lived with or supported his wife from that day to the date of her death.

The auditor awarded the husband one-third of the distributable balance in the account, holding that the separation from his wife did not amount to wilful and malicious desertion, but was for good and sufficient cause and was consented to by her.

On exceptions to the report the court reversed the auditor and held that appellant's conduct amounted in

law to wilful and malicious desertion, thereby forfeiting all interest in her estate.

The findings of fact of an auditor are entitled to great weight, but it is stating the matter too broadly to say that of themselves they have the force and effect of the verdict of a jury: Worrall's App., 110 Pa. 349, 362. The correct ruling is that *when approved by the court below* they have the force and effect of the verdict of a jury and will not be set aside except for clear error: Hamilton v. Fay, 283 Pa. 175, 178; Donaldson v. Andresen, 300 Pa. 312; Finch's Est., 86 Pa. Superior Ct. 238. The discussion by Judge AGNEW in Phillips's Appeal, 68 Pa. 130, correctly states the law: "The effect of an appointment of a master to report the facts and a proper decree is no doubt to bring into the report not only the facts directly proved, but his deductions of fact and conclusions of law, in order to arrive at the decree. But there is no impropriety in this, as it only serves to develop the cause fully, and is not binding on the parties unless approved by us after an examination of the matters in dispute. The conclusiveness of a master's report is sometimes spoken of. But properly speaking no report is conclusive. That would be to make the judgment of an officer performing an ancillary service superior to our own. The weight due to a master's or auditor's report depends on the matter in question. When he reports facts directly proved by the witnesses we are accustomed to give his report great weight, because of his superior opportunities of judging of the credibility of the witnesses and the effect of their testimony. But when the fact is a deduction merely from other facts reported by him, his conclusion is simply a result of reasoning, of which we are as competent to judge as he. Then if we find a master supporting a conclusion by false deductions, or upon erroneous views of the character and weight of the facts actually found, it is

not only our right but our duty to correct his error. When in order to arrive at a proper decree he also states his conclusions of law, they are but opinions submitted for our adoption, if we think they are founded in reason and law. Hence the report of a master is neither a decision nor an infallible guide, but is a serviceable instrumentality to aid us in performing our own functions.'' Where the rule has been more broadly stated it will be found that in the particular case involved the report of the auditor or master had been approved by the court below, and the appellate court was referring to the situation as it existed in that case. But even when approved by the court below the findings of an auditor will be set aside in the appellate courts in so far as they, are really inferences drawn from facts, rather than pure findings of fact, if they are not correctly reasoned or inferred: Sweatman's App., 150 Pa. 369, 373; Moyer's App., 77 Pa. 482, 486; Hindman's App., 85 Pa. 466, 470. See also McConville v. Ingham, 268 Pa. 507; Altaffer v. Anderson Auto. Co., 77 Pa. Superior Ct. 63; Hamilton v. Fay, supra, p. 179; Friedline v. Hoffman, 271 Pa. 530, 535.

The court below based its action on two grounds: (1) That the auditor had erred in ruling out as inadmissible the evidence of the deceased wife taken in an action of divorce brought by her a short time before her death, on the ground of wilful and malicious desertion, in which her husband had appeared and had cross-examined her before her death put an end to the action; and (2) the finding or conclusion of the auditor that the desertion was not wilful and malicious was not a pure finding of fact, but a mixed finding of fact and law, based on inferences or deductions which were not justified by the evidence. We agree with the court on both points.

(1) The evidence which was ruled out was given by

the decedent under oath, in a civil action, one in divorce, between her and the appellant, where the issue was,—just as it was an issue here—whether he had wilfully and maliciously and without proper cause, deserted her. He had been served with process, had appeared and defended the action, and had cross-examined her as a witness. In these circumstances, we think her evidence as to the events occurring at or about the time of appellant's departure from the common home and his subsequent conduct towards her was relevant and admissible. If the record in proceedings brought by her against her husband for support, alleging desertion, would be admissible in evidence (Schreckengost's Est., 77 Pa. Superior Ct. 235), though not conclusive, (Phillip's Est., 271 Pa. 129), we think her evidence (direct and cross-examination) taken in a divorce action where the issue was his alleged desertion of her, which if successfully prosecuted would have barred his claim, but which was halted by her death before a decision was reached, is likewise admissible as relevant and material: Haupt v. Henninger, 37 Pa. 138, 140; Evans v. Reed, 78 Pa. 415, 417: Act of May 23, 1887, P. L. 158, sec. 9; Hahn v. Bealor, 132 Pa. 242, 254; Birchard's Est., 154 Pa. 89, 91; Mehaffeys' Est., 102 Pa. Superior Ct. 228, 234. We need not discuss the question whether the admission of this evidence would make the appellant a competent witness, for his disability as a witness (See Schreckengost's Est., supra; Phillip's Est., supra) was removed by the appellee calling him as a witness, to testify as if under cross-examination: Act of May 23, 1887, supra, sec. 6. The evidence was important not only as respects the circumstances attending the appellant's separation from his wife, but also in explanation of one point on which the auditor laid great stress, as evidencing her consent to his going, viz., that when he returned on the Saturday following his

departure she had his clothes packed and ready. She testified that on going away he had notified her he would be back the following Saturday for his clothes, (See Whelan v. Whelan, 183 Pa. 293, 294) and as to her fear of being alone with him in the house.

(2) It is unquestioned that the appellant left the family dwelling on September 17, 1917; that he never came back to see his wife,—except to get his clothes the following Saturday—or communicated with her, with a view to re-establishing the family relation, or contributed anything to her support, from that day to the date of her death. These are all pure matters of fact. Whether they establish a wilful and malicious desertion, or an excusable separation is a mixed question of fact and law, dependent on the inferences to be drawn from the facts and the application of legal principles to them. See Altaffer v. Anderson Auto Co., supra. Ordinarily, wilful absence from the family home is presumed to be malicious: Bealor v. Hahn, 117 Pa. 169, 173; Whelan v. Whelan, supra. Intent to desert is presumed when the husband leaves his wife and withdraws from the common home without legal cause or her consent: Lodge's Est., 287 Pa. 184; and long-continued absence of the husband being proved, it is incumbent on him to show reasonable and lawful cause for such desertion: Hahn v. Bealor, 132 Pa. 242, 256; and, in order to entitle a husband who has deserted his wife for one year or upwards previous to her death, to share in her estate, he must show such cause or excuse for his leaving her as would be sufficient to entitle him to a decree of divorce against her: Hahn v. Bealor, supra, p. 256; Hayes' Est., 23 Pa. Superior Ct. 570, 575.

Nothing in the evidence before us justifies the inference that the wife consented to the appellant's leaving her, or that he had reasonable and lawful cause for so doing, and his subsequent conduct for the ten and

a half years following until his wife's death, negatives either. He certainly did not show sufficient cause to entitle him to a divorce from her.

The family, at the time of the husband's departure, lived on a farm near Southampton, owned by the wife. The husband knew nothing about farming, and worked regularly in the City of Philadelphia, leaving home early in the morning and returning in the evening. The children at home were not old enough to work on the farm. It was necessary to hire a man to do this work, and the husband hired one John Krier for the purpose. He subsequently demanded of his wife that she discharge this hired man. He did not propose to do the work himself and had not secured any one else to do it. She refused to discharge the man, and that was the husband's sole excuse for leaving. He expressly disclaimed any allegation or suggestion that there were any immoral relations between his wife and Krier. He never charged such misconduct and does not do it now. The wife may have acted unwisely in refusing to discharge Krier, but her conduct was not such as to give legal cause for her husband definitely leaving her, never coming to see her or communicating with her again, making no provision whatever for her support, and in effect abandoning her until she died. The evidence as to the relations between appellant and the decedent prior to his going, and his subsequent attempt to obtain for himself title to the farm, lend support to the theory that he had lost his affection for his wife, did not want to live with her, and that his alleged cause for leaving was only an excuse.

The auditor treated the case, and the appellant has argued it in this Court, as if the wilful and malicious desertion of his wife by the husband for one year or upwards previous to the death of the wife was the only question involved. It is not. Section 5 of the

Intestate Act of 1917, P. L. 429, p. 435, also debars a husband from sharing in the real or personal estate of his deceased wife if he "shall have, for one year or upwards, previous to the death of his wife, wilfully neglected or refused to provide for his wife," and it was held in Kvist's Est., 256 Pa. 30, that the mere fact that the wife does not demand support does not excuse the husband from the performance of his duty towards her; and that if there is a failure to support, proof of desertion is unnecessary. See also, White's Est., 188 Pa. 633; Shaw's Est., supra; Russell's Est., 86 Pa. Superior Ct. 494.

The appellant admitted that he did nothing by way of supporting his wife from the day he left her until she died. The fact that she was able to maintain herself by carrying on the farming operations is not a sufficient excuse for his failure to do anything in the performance of his duty: Hilker's Est., 22 W. N. C. 148.

We are satisfied that on the evidence before us a court would have been justified in granting Mrs. Nixon the rights of a feme sole trader under the Act of May 4, 1855, P. L. 430, and while section 5 of that Act has been superseded by section 5 of the Intestate Act of June 7, 1917, P. L. 429, it is still the law that the wilful neglect or refusal of a husband to provide for his wife, or his wilful and malicious desertion of her, which will justify her being declared a feme sole trader, will, if persisted in for one year or upwards previous to her death, deprive him of the right to share in her real and personal estate at her death: Bremer's Petition, 279 Pa. 405, 409.

On both grounds, wilful neglect to provide for his wife, and wilful and malicious desertion of her, for one year and upwards previous to her death, we think the decree of the court below was justified.

The assignments of error are overruled and the decree of the orphans' court of Bucks County is affirmed. The costs to be paid out of the estate.

